JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, George Garltic ("defendant"), appeals from the judgment entered pursuant to a jury trial finding him guilty of attempted murder and aggravated assault. After a thorough review of the record and for the reasons set forth below, we reverse and remand for a new trial.
 {¶ 2} The record presented to us on appeal reveals the following: In the early morning hours of June 26, 2006, James Spetz ("Spetz") sustained ten stab wounds, which required surgery and hospitalization. He maintained that the injuries were the result of an altercation with defendant, a 19-year-old male, after a punk-rock concert in Cleveland Heights, Ohio. Throughout trial, defendant contended that he stabbed Spetz in self-defense and only after Spetz and Spetz's friends had repeatedly punched and kicked him in the face, knocking him unconscious and breaking his jaw.
 {¶ 3} On November 14, 2006, the Cuyahoga County Grand Jury indicted defendant on one count of aggravated robbery, six counts of robbery, three counts of felonious assault, one count of aggravated assault, one count of attempted murder, and one count of kidnapping.
 {¶ 4} On January 22, 2007, defendant's jury trial began. At trial, the State alleged that defendant knowingly caused serious physical harm to Spetz and purposely attempted to cause his death.[1] Defendant asserted self-defense and provocation. *Page 4 
 {¶ 5} The State first presented the testimony of Spetz, who stated the following: In the early morning hours of June 26, 2006, he was outside a bar in Cleveland Heights when defendant and his friend, Richard McFarland, approached him and demanded money. Spetz refused and the defendant pushed him. Spetz then punched defendant in the face so hard that it knocked him down. Spetz and his friends walked away and the defendant and McFarland followed them. Defendant then chased after them. Spetz ran towards defendant. According to Spetz, he was stabbed as soon as he approached the defendant. In his words, Spetz "was still kind of coming at him when it happened so [they] went to the ground. And it was almost like a wrestling match from that point on."[2]
 {¶ 6} Spetz and the defendant fell to the ground with Spetz on top of the defendant. Defendant continued to stab Spetz and Spetz started punching defendant in the face and head. After several minutes, several of Spetz's friends pulled Spetz off of the defendant. As a result of this incident, Spetz received ten stab wounds and required surgery and hospitalization.
 {¶ 7} The State next presented the testimony of Sebastian Amoroso, one of the friends that was with Spetz on the morning of the assault. He testified that he saw defendant demand money from Spetz and that Spetz punched him. He testified that defendant followed them and began chasing two of the friends. He next saw Spetz running at defendant and the two rolling on the ground. Amoroso realized that Spetz had been stabbed and grabbed the *Page 5 
defendant's arm trying to get the knife away from him. He testified that he saw someone kick defendant in the head and felt blood spatter on his own face. On cross-examination, he denied hitting the defendant.
 {¶ 8} The State then called Tiffany Besselman, another friend of Spetz and a witness to the assault. She testified that defendant and McFarland were menacing them and asking for money. She saw Spetz and defendant in the street fighting but did not see who threw the first punch. She testified that the defendant stood up and that McFarland yelled after them "You shouldn't have done that. We have a knife." She testified that she saw the defendant start running after them and then Spetz came running at him and then she saw Spetz being stabbed by the defendant.
 {¶ 9} Matthew Bucher, another friend of Spetz and witness to the assault, was called next. He stated that he came out of an apartment and saw Spetz and the defendant on the ground fighting. Spetz was on top of the defendant. He said that he realized that Spetz had been stabbed and pulled him off of the defendant. He said he chased defendant and McFarland for a few blocks but stopped when they told him that they had a gun. On recall, Bucher admitted that he punched the defendant several times while trying to pull Spetz off of him.
 {¶ 10} The State called Richard McFarland to testify. He testified that he went to Cleveland Heights with defendant and some other friends on the evening of June 25, 2006 to attend a punk-rock concert at the Grog Shop. After the concert, McFarland and the defendant were left behind and began to panhandle and ask people for money to get home. *Page 6 
McFarland denied that he demanded money from Spetz and stated that he only confronted Spetz because Spetz and his friends were harassing a young skateboarder.[3] McFarland claimed that Spetz called him a "faggot" or a "queer" and then punched defendant in the face and knocked him to the ground. He stated that Spetz and four of his friends began kicking and stomping defendant in his face and head, causing defendant to break his jaw, lose several teeth, and lose consciousness for several moments. McFarland stated that they kicked defendant about "74 times." McFarland stated he helped defendant to his feet and then gave him a knife. He testified that defendant went after Spetz and started stabbing him. He stated that he panicked and ran away. He admitted that he met up with the defendant shortly thereafter, threw away the knife, and hid in the woods until the next morning.
 {¶ 11} The State called Detective Joseph Greene of the Cleveland Heights Police Department. Det. Greene said that he went to the hospital the day after the assault with some photographs and that Spetz identified McFarland as one of the men who assaulted him. On July 3, 2006, he took a statement from McFarland, who identified defendant as the person who stabbed Spetz. On July 5, 2006, Spetz identified defendant as the person who stabbed him. On July 18, 2006, Det. Greene interviewed the defendant. Defendant admitted that he had been involved in two altercations with Spetz but did not admit that he stabbed him. Defendant also asked if he could pursue charges against Spetz for punching him and breaking *Page 7 
his jaw. On redirect, Det. Greene stated that he did not pursue charges against Spetz for the defendant's injuries because he felt Spetz was the victim.
 {¶ 12} The court overruled the defendant's motion for acquittal and the defense presented two witnesses: Lynn Walker and the defendant. Walker testified that she drove the defendant and McFarland to the concert at the Grog Shop on the evening of the assault. She testified that she left them in Cleveland Heights because she told them to be back at the car at 12:30 a.m. but they were not there. She testified that she visited defendant in the hospital the next day and that "his mouth was just hanging off of his face." She stated that defendant told her that he stabbed Spetz.
 {¶ 13} Finally, defendant testified on his own behalf and gave the following testimony: In the early morning hours of June 26, 2006, he was outside a bar in Cleveland Heights when Spetz called him a "queer" and spit in his face. Defendant spit back at Spetz and then Spetz punched him in the face. Defendant fell to the ground and was kicked in the head by several people. Defendant got to his feet, took a knife from McFarland, and "bee-lined" towards Spetz and his friends. Defendant claimed he only followed Spetz because he did not want him to get away before the police could arrest him; however, he also stated that he was "very mad" because of what they had done to him. Defendant approached two of Spetz's friends and asked which one had knocked his teeth out. One of the friends pointed towards Spetz, who was running down the hill toward the defendant. Spetz grabbed defendant by the shirt and defendant stabbed him. Spetz either threw defendant to the ground, or defendant fell backwards; however, Spetz landed on top of defendant and began *Page 8 
punching him. Defendant continued to stab Spetz until Spetz was pulled off him by his friends. Defendant did not remember getting punched by any of Spetz's friends at this time. Defendant and McFarland ran away. Defendant went to the hospital the following day. As a result of this incident, defendant broke his jaw and required numerous stitches and steel plates in his jaw.
 {¶ 14} The court instructed the jury on felonious assault, aggravated assault, and attempted murder. On January 30, 2007, the jury found defendant guilty of the inferior degree offense of aggravated assault and attempted murder. Defendant appeals and raises five assignments of error for our review, which shall be addressed together and out of order where appropriate.
 {¶ 15} "I. The trial court erred by denying defense counsel's request for a self-defense instruction.
 {¶ 16} "II. Appellant was denied his Sixth Amendment rights when counsel did not request jury instructions as to inferior-degree offenses under Count 12."
 {¶ 17} In his second assignment of error, defendant claims that trial counsel was ineffective in failing to request a jury instruction on attempted voluntary manslaughter, the inferior degree offense for attempted murder, since the evidence established, and the jury found, serious provocation.[4] *Page 9 
 {¶ 18} "A jury must be instructed on inferior degrees of the indicted offense where the evidence presented at trial supports such an instruction. R.C. 2945.74; Crim. R. 31." State v. Sanders (May 17, 2000), Summit App. No. 19783, citing State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, paragraph four of the syllabus.
 {¶ 19} On the record, defense counsel admitted he should have requested an inferior degree instruction on the attempted murder charge based upon the jury's finding that the element of provocation existed with regard to the charge of felonious assault.[5] This shows there was no strategic reason for not requesting the instruction and defense counsel moved the court to reconcile the inconsistent verdicts. The trial court declined to reconcile the inconsistencies and accepted both the guilty verdict on aggravated assault and attempted murder.
 {¶ 20} Attempted voluntary manslaughter contains the element of extreme emotional stress and is an inferior degree offense of attempted murder just as aggravated assault may be to felonious assault. State v.Muscatello (1978), 55 Ohio St.2d 201. The evidence in the record shows that the jury considered the effect of provocation and extreme emotional stress during their deliberations, since they found defendant guilty of aggravated assault rather than felonious assault. Clearly, the jury found that the mitigating element of provocation existed *Page 10 
under the facts of this case. Accordingly, it follows that had they been allowed to do so, they would have found the element of provocation present to reduce the charge of attempted murder to attempted voluntary manslaughter and the jury verdict would have been different.
 {¶ 21} Therefore, defendant has satisfied his burden that the outcome of the trial would have been different had the jury been instructed on the inferior offense of attempted voluntary manslaughter. Since the record established the jury's finding of the provocation element, we vacate defendants' conviction and sentence for attempted murder.
 {¶ 22} In his first assignment of error, defendant maintains that the trial court erred by denying his request for a self-defense instruction. Requesting instructions on both an inferior degree offense (which includes a mitigating factor that the defendant's actions were provoked) and self-defense is permissible. While courts have deemed it reasonable trial strategy for defense counsel to elect one theory over the other, [6] the alternative claims are not mutually exclusive and the trial court must instruct a jury on both if the defense requests it and the evidence warrants it. State v. Smith, 168 Ohio App.3d 141 (stating that "[o]n remand, the jury will have to decide whether Smith returned to his home in a revenge-seeking rage, pointed his gun at Dingo, and fired, as the state claimed, or whether Smith shot Dingo in self-defense or because he was suddenly provoked"), citing State v. Ervin (1991),75 Ohio App.3d 275, 279 ("Where there is sufficient evidence on the issues of self-defense and aggravated assault, the trial court must charge the jury on both issues. State v. Keeler (June *Page 11 
2, 1983), Cuyahoga App. No. 45603; State v. Weems (Mar. 18, 1982), Cuyahoga App. No. 43813.") Other citations omitted.
 {¶ 23} In this matter, there is evidence from which a jury could conclude that defendant acted out of provocation or self-defense. According to the record evidence, it was the victim and his friends who beat the defendant unconscious and broke his jaw. They left him and began walking to a friend's house in the area. Defendant's friend then gave defendant a knife for protection because the defendant started to follow the group of people that had just beat him up. Defendant said that he was both angry and in fear for his life. Defendant claimed he pursued the group to hold them for police. Defendant was asking who had broken his j aw when the victim ran at the defendant. The victim grabbed the defendant's shirt and the two fell to the ground fighting. The victim was on top of the defendant the whole time. Although the victim was stabbed, he remained on top of defendant, all the while punching the defendant as his friends were also punching and kicking the defendant. One person said he felt defendant's blood splash on him. Defendant testified he was defending himself. He said he was scared and did not know if they were going to end up killing him or not.
 {¶ 24} The State acknowledges that throughout the trial it and the defendant framed their arguments to the jury with the self-defense theory in mind. However, the jury was not instructed on this defense and could not therefore, reach a decision regarding it.
 {¶ 25} While the State maintains that defendant violated a duty to retreat because he followed the victim's group, defendant said he did that so he could make sure they got *Page 12 
arrested for beating him. The evidence shows that the victim ran at the defendant. Whether defendant ultimately stabbed the victim out of provocation or in self-defense is an issue for the jury to decide. Just because the defendant's friend gave him a knife for his protection does not automatically negate a theory of self-defense, especially where a reasonable juror could fairly interpret the evidence to conclude that the victim initiated the subsequent altercation by charging at defendant and grabbing him.
 {¶ 26} Because the trial court dismissed the felonious assault charge pursuant to Crim. R. 29 and the evidence was sufficient to sustain only an attempted voluntary manslaughter rather than an attempted murder charge, the matter is remanded for a new trial on the inferior degree offenses of aggravated assault and attempted voluntary manslaughter. At the new trial, the court shall instruct the jury on self-defense if warranted by the evidence that may be introduced on this affirmative defense at the retrial.
 {¶ 27} Assignments of Error I and II are sustained.
 {¶ 28} "III. The trial court erred by denying appellant's motion for acquittal as to Counts 11 and 12 pursuant to Crim. R. 29.
 {¶ 29} "IV. Appellant's convictions were against the manifest weight of the evidence."
 {¶ 30} In these assignments of error, defendant argues that the State failed to present sufficient evidence to support his convictions for aggravated assault and attempted murder and that his convictions for aggravated assault and attempted murder are against the manifest weight of the evidence. As set forth above, the jury's finding of provocation would reduce *Page 13 
his conviction for attempted murder to attempted voluntary manslaughter; therefore, the third assignment of error is sustained to that extent. However, because this matter is being remanded for a new trial on the inferior degree offenses of aggravated assault and attempted voluntary manslaughter, these assignments of error are otherwise moot.
 {¶ 31} "V. The admission of appellant's statement to police over his objection violated his Fifth Amendment rights and deprived him of due process and a fair trial."
 {¶ 32} In his last assignment of error, defendant argues that the trial court erred in allowing Det. Greene to testify that defendant refused to make a statement about the stabbing without his lawyer present. This Court has previously held that it is not error, when a defendant has spoken after receiving his Miranda rights, for the police to comment on the defendant's refusal to continue speaking. SeeState v. Lutz, Cuyahoga App. No. 80241, 2003-Ohio-275, citing State v.Gillard (1988), 40 Ohio St.3d 226, 231 and State v. Osborne (1977),50 Ohio St.2d 211, 216. Moreover, defendant testified on his own behalf and admitted that he stabbed the defendant.
 {¶ 33} Assignment of Error V is overruled.
 {¶ 34} Judgment reversed, convictions and sentence are vacated and the matter is remanded for a new trial on the inferior degree offenses of aggravated assault and attempted voluntary manslaughter and for further proceeding consistent with this opinion.
It is ordered that appellant shall recover of appellee his costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 14 
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J., and PATRICIA A. BLACKMON, J., CONCUR
[1] Although defendant was indicted on 13 offenses, he was only convicted of two offenses. Accordingly, the facts will be limited to those relevant to the ultimate outcome.
[2] Tr. 225.
[3] In fact, McFarland pled guilty to three counts of robbery with regards to his "panhandling" and was sentenced to two years in prison.
[4] To establish a claim of ineffective assistance of counsel, defendant must show two components: (1) "`that counsel's performance was deficient' and (2) `that the deficient performance prejudiced the defense.'" State v. Kole, 92 Ohio St.3d 303, 2001-Ohio-191, quotingStrickland v. Washington (1984), 466 U.S. 668, 687. However, appellate review of counsel's performance must be highly deferential. Id. There is a strong presumption that counsel's performance constituted reasonable assistance. State v. Foust, 105 Ohio St.3d 137, 151, 2004-Ohio-7006, ¶ 79.
[5] Tr. 696.
[6] E.g., State v. McCullough (Aug. 17, 1995), Cuyahoga App. No. 67786. *Page 1