[Cite as *State v. Sekic*, 2011-Ohio-3978.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95633**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANDREAS SEKIC

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART,
REVERSED IN PART, REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-531300

**BEFORE:** S. Gallagher, J., Kilbane, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** August 11, 2011

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio   44116

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Brian S. Deckert
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, J.:

{¶ 1}   Appellant Andreas Sekic ("Sekic") appeals his conviction in the Cuyahoga County Court of Common Pleas for felonious assault.   For the reasons stated herein, we affirm in part and reverse in part the decision of the trial court.

{¶ 2}   Sekic and his wife's family have a tumultuous history.   Mrs. Sekic's stepbrother, Kristopher Ford ("Kris Ford"), was banned from the Sekic household for stealing Christmas gifts from the Sekics' children.   Kris Ford's mother, Barbara Ford, used to babysit for the Sekic family until Sekic accused her of stealing clothes.   This led

to "bad relations" between Sekic and the rest of the Ford family, including Mrs. Sekic's stepfather, Steve Ford, and Steve Ford's brother, Kenneth Ford ("Ken Ford").

{¶ 3} On November 17, 2009, Sekic stopped at a convenience store on his way home from work where Steve, Kris, and Ken Ford were also present. Sekic disputes whether this was a coincidence or a premeditated act. The Fords pulled their car behind Sekic's parked car, blocking Sekic from leaving. Sekic believed he was in danger. The Fords disputed the nature of the encounter. The Fords claim that Sekic "went crazy" upon seeing them at the store. Sekic claims the Fords were watching him and blocking his car in the parking lot. After the short encounter, the Fords drove to their apartment.

{¶ 4} Sekic drove to another convenience store to buy cigarettes. Whether he followed the Fords a short way is disputed, but the cars drove in similar directions. Steve Ford drove Kris and Ken Ford back to the apartment and then returned to the second convenience store where Sekic was buying cigarettes. Steve Ford had seen Sekic pull into the lot before dropping his relatives off. Sekic called his father, Asim Sekic, to help "mediate" the situation with the Fords. After about 15 minutes, Sekic, Asim Sekic, and Sekic's sister, Vanessa Sekic, drove to the Fords' apartment. Vanessa Sekic thought they were going to talk about the upcoming Thanksgiving holiday. The Fords placed a more sinister motive behind the Sekics' action.

{¶ 5} Upon arriving at the apartment, Sekic stepped down into a patio area and knocked or banged, depending on the witness, on the sliding glass door. Kris and Steve Ford answered, and from there the stories significantly diverge. According to Sekic, Kris

and Steve Ford immediately started shouting and threatening to harm Sekic and his father; Kris stepped outside and started elbowing and shoving Sekic; Steve Ford reached behind a chair or couch for what Sekic thought was a weapon; and Ken Ford began to step outside. Sekic claims, after being pushed back onto a small table, he grabbed the first thing available, a ceramic flowerpot or ashtray, to ward off the "swarming" attackers. Sekic grabbed a ceramic object and threw it, hitting Kris Ford in the face and ear causing significant injury. According to Kris Ford, Sekic began berating him immediately, and then he was hit by the flowerpot that was thrown by Sekic. No one had a weapon.

{¶ 6} Vanessa Sekic remembers seeing the Fords act aggressively and hearing the Fords yell at her brother and father. She further stated that Kris Ford then stepped outside and "chest bumped" Sekic, which caused him to step backwards into the little table where he found the ceramic object. After the object hit Kris Ford, both he and Sekic started punching each other. At the same time, Steve Ford was tussling with Asim Sekic.

{¶ 7} A jury found Sekic guilty on two counts of felonious assault, which were merged for sentencing. The trial court sentenced him to two years of incarceration. It is from this conviction that Sekic timely appeals, raising four assignments of error. We will address each in turn.

{¶ 8} Sekic's first assignment of error provides as follows: "The trial court erred by denying defense counsel's request for a self-defense instruction." We find his first assignment of error to be without merit.

{¶ 9}   A trial court is provided the discretion to determine whether the evidence adduced at trial was sufficient to require a corresponding jury instruction. *State v. Fulmer*, 117 Ohio St.3d 319, 326, 2008-Ohio-936, 883 N.E.2d 1052.  Such a decision will not be disturbed absent a finding that the trial court abused its discretion.  The term "abuse of discretion" means "an unreasonable, arbitrary, or unconscionable action." *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 130. It is "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.   The term has been defined as a view or action that no conscientious judge, acting intelligently, could honestly have taken."   (Citations and quotations omitted.)   *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

{¶ 10} More specific to the current case, a trial court does not need to instruct the jury on self-defense unless the defendant has successfully raised the affirmative defense by introducing "sufficient evidence, which, if believed, would raise a question in the minds of reasonable [triers of fact] concerning the existence of such issue." *State v. Melchior* (1978), 56 Ohio St.2d 15, 381 N.E.2d 195, paragraph one of the syllabus. Evidence is sufficient where there is reasonable doubt of guilt based upon a claim of self-defense.  Id. at 20.  "If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted."  Id.  Thus, if the evidence submitted at trial is believed by the trier of fact, the question is whether that evidence will create reasonable

doubt of the defendant's guilt. A trial court does not err in refusing to include a self-defense jury instruction when the evidence does not support the claim. Id. at 22.

{¶ 11} To establish self-defense at trial, the defendant must show, by a preponderance of the evidence pursuant to R.C. 2901.05(A), that (1) he was not at fault in creating the situation giving rise to the disturbance; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm; (3) that his only means of escape from such danger was in the use of such force; and (4) he must not have violated any duty to retreat or avoid the danger. Id. at 20-21.

{¶ 12} We agree with the trial court that Sekic failed to raise a colorable claim of self-defense, however, based on a different standard. The trial court considered the evidence in a light most favorable to the defendant and found that Sekic failed to meet, by a preponderance of the evidence, the requirements for a self-defense instruction. The standard for whether to give an instruction is not preponderance, rather it is whether there is sufficient evidence if the evidence is believed. Id. at syllabus.

{¶ 13} In this case, Sekic created the situation at the apartment that led to the physical confrontation. His encounter with Kris, Steve, and Ken Ford at the convenience store created the tension that led to the struggle at the Ford residence. The Fords voluntarily left the convenience stores' parking lots, thereby ending the confrontation. Sekic's act of going to the apartment to resolve any issues while tensions were still high elevated the nature of the encounter. Instead of allowing cooler heads to prevail, Sekic

immediately forced the issue, with his father present, by confronting the Fords in their home.

{¶ 14} While we agree that according to Sekic, Kris Ford was the immediate aggressor of the physical altercation on the porch, a self-defense instruction is unwarranted in such instances where Sekic voluntarily confronted Kris Ford knowing the possible dangers. See *State v. Nichols*, Scioto App. No. 01CA2775, 2002-Ohio-415. For example, the defendant in *Nichols* exchanged unpleasantries with the victim throughout an evening spent drinking at a bar. The victim left. The defendant followed and confronted the victim in the parking lot where a fight ensued. The victim was knocked down and kicked in the head. The *Nichols* court affirmed the trial court's refusal to give a self-defense instruction, stating that "Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense." Id.

{¶ 15} Even if we believe all of Sekic's testimony over that of the Fords, especially the part where Kris Ford throws the first punch, Sekic created the situation and failed to avoid the danger that led to the physical altercation. According to Sekic's trial testimony, he was afraid the Fords would try to harm him at the convenience store. Also according to Sekic, the "conversation" at the apartment turned to fisticuffs almost immediately. Having willingly advanced toward a volatile situation, where he already thought the others would harm him, he cannot rely on the affirmative defense of self-defense when the others actually do that which he feared. In most circumstances, a

defendant may not claim self-defense if he has a reasonable means of retreat from the confrontation. *Melchior*, 56 Ohio St.2d at 20.

{¶ 16} On this point, Sekic relies on our decision in *State v. Garltic*, Cuyahoga App. No. 90128, 2008-Ohio-4575, ¶ 22-24, for the proposition that when the evidence conflicts as to the start of the fight, the self-defense instruction is warranted. Sekic's reliance on *Garltic* is misplaced. This court reversed a jury verdict and remanded the *Garltic* case to the trial court based on ineffective assistance of counsel. Garltic argued that his trial attorney failed to request an instruction on the inferior offense of voluntary manslaughter in his attempted murder trial. Garltic argued he was provoked. Thus, the self-defense jury instruction issue was not resolved. In fact, this court specifically noted that upon remand, the trial court should only give the self-defense instruction at the new trial if the evidence warranted such. Id. at ¶ 26. The case is therefore inapplicable to the current one.

{¶ 17} It is undisputed that the Fords voluntarily parted ways with Sekic at the convenience store and Sekic then sought out the Fords in order to confront them. In light of that, it cannot be said that the trial court abused its discretion in omitting the self-defense jury instruction. The evidence presented at trial did not sufficiently establish that the self-defense instruction was warranted. Sekic's first assignment of error is overruled.

{¶ 18} Sekic's second assignment of error provides as follows: "The trial court erred by allowing the state to introduce other acts evidence contrary to Evid.R. 404(B)

which resulted in unfair prejudice to appellant." His second assignment of error lacks merit.

{¶ 19} The trial court permitted Sekic's wife to testify about a police report filed in March 2008 wherein she alleged that Sekic threatened to kill her and her family. Sekic challenged the admissibility of the other acts evidence pursuant to Evid.R. 404(B), which provides in part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The trial court has broad discretion in the admission or exclusion of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should be slow to interfere. *Hancock*, 108 Ohio St.3d 57, ¶ 122.

{¶ 20} The other-acts exception is not applicable in the current case. Sekic's wife testified to Sekic's propensity for nonviolence. The defense "opened the door" for the state to address the police report as it tends to contradict her opinion that Sekic is not violent.

{¶ 21} Evid.R. 405(A) provides that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." A witness testifying to a defendant's character may be examined as to the "existence of reports of particular acts, vices, or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed to him by the witness — not to establish the

truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given his testimony." *State v. Elliott* (1971), 25 Ohio St.2d 249, 267 N.E.2d 806, paragraph two of the syllabus.

{¶ 22} In this case, the testimony of Sekic's wife about the 2008 police report was properly admitted to test her credibility, specifically about Sekic's reputation for nonviolence, pursuant to Evid.R. 405(A). Sekic's wife alleged in the report that Sekic threatened to kill her and her family. That allegation directly contradicts her opinion that Sekic is not violent. The court allowed Sekic the opportunity to craft a limiting instruction to place this testimony into context. Sekic, not wanting to draw undue attention to the report, forewent the opportunity. The admission of the evidence for credibility purposes was in accord with Evid.R. 405(A). The trial court did not abuse its discretion in admitting the testimony of Sekic's wife, and Sekic's second assignment of error is overruled.

{¶ 23} Sekic's third assignment of error provides as follows: "Appellant's convictions were against the manifest weight of the evidence." More specifically, Sekic challenges the weight of the evidence supporting the felonious assault charge for which he was convicted, claiming the Fords provoked Sekic into the fight. For the following reason, his third assignment of error is without merit.

{¶ 24} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.

In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal citations and quotations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.

{¶ 25} Sekic was convicted of felonious assault in violation of R.C. 2903.11. The trial court also instructed the jury on the inferior offense of aggravated assault in violation of R.C. 2903.12 on the theory that the jury could find that the Fords provoked Sekic into attacking. The offense of felonious assault under R.C. 2903.11 provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Aggravated assault, the inferior offense, adds the mitigating phrase that no person shall knowingly cause, or attempt to cause, serious physical harm "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.12(A).

{¶ 26} This court has previously explained as follows:

> **"In determining whether there was sufficient evidence of adequate provocation, the Ohio Supreme Court set forth a two-part inquiry in *State v. Mack*, 82 Ohio St.3d 198, 201, 1998-Ohio-375, 694 N.E.2d 1328. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. In determining whether the provocation was reasonably sufficient * * * the court must consider the emotional and mental state of the defendant and the conditions and circumstances**

**that surround him at the time. The provocation must be occasioned by the victim and must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. If the objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case actually was under the influence of sudden passion or in a sudden fit of rage."**

(Internal citations and quotations omitted.) *State v. Shearer*, Cuyahoga App. No. 92974, 2010-Ohio-1666, ¶ 24.

{¶ 27} The jury did not lose its way in finding Sekic guilty of felonious assault rather than aggravated assault. Sekic voluntarily approached the Fords at their apartment at least 15 minutes after the initial encounters. We agree with Sekic that Kris Ford had credibility issues; however, whether Kris Ford started the fight on the porch of the apartment is not the issue. Sekic instigated the entire situation by confronting the Fords at their home while tensions were still high. Further, the jury heard all the testimony, observed the witnesses, and reviewed all the exhibits. Even if the jury disbelieved Kris Ford's version of the incident, the evidence still established beyond a reasonable doubt that Sekic knowingly caused serious physical harm to Kris Ford.

{¶ 28} The only question is whether the provocation from the convenience store episode or from Kris Ford's aggressive behavior was reasonably sufficient to incite Sekic's use of force. We find that it was not. After the episode at the convenience store, Sekic had the opportunity to reflect. The Fords left the convenience store and went home. Sekic had the same opportunity, but instead got his father to join him in confronting the Fords, escalating an already tense situation. Furthermore, Sekic's own version of events established that he went there to make peace, not to finish the fight

under the influence of sudden passion or in a sudden fit of rage. He also stated that the fight happened almost immediately upon opening the door. Those facts alone are enough to sustain the conviction for felonious assault. After examining the entire record, weighing the evidence and all reasonable inferences therefrom, and considering the credibility of the witnesses, we do not find that Sekic's conviction is against the manifest weight of evidence. The state proved every element of felonious assault beyond a reasonable doubt, and Sekic's third assignment of error is overruled.

{¶ 29} Sekic's fourth assignment of error challenges the trial court's decision to impose restitution without holding a hearing to establish the amount. Specifically, it provides as follows: "The trial court erred by ordering restitution." This assignment of error has merit.

{¶ 30} We review the trial court's imposition of fines and restitution under the abuse of discretion standard. The term abuse of discretion means "an unreasonable, arbitrary, or unconscionable action." *State ex rel. Doe,* 123 Ohio St.3d at 47. It is "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence. The term has been defined as a view or action that no conscientious judge, acting intelligently, could honestly have taken." (Citations and quotations omitted.) *Hancock*, 108 Ohio St.3d 57, ¶ 130. Restitution is statutorily controlled. Courts may order restitution to compensate the victims only under certain conditions. R.C. 2929.18(A)(1). The legislature mandated that if a court imposes restitution at sentencing, it must do so in open court at that time and also hold a hearing on restitution

if the offender disputes the amount. Id. Once the amount of restitution is challenged, the trial court must determine the amount of restitution to be included in the final sentencing order after hearing evidence. A sentencing entry that does not include the amount of restitution is not a final order. *State v. Brewer*, Cuyahoga App. No. 94144, 2010-Ohio-5242. Moreover, once that amount is determined, there is no provision in R.C. 2929.18 authorizing the trial court to exercise continuing jurisdiction to modify the amount of a financial sanction. Id. at ¶ 15, citing *State v. Purnell*, 171 Ohio App.3d 446, 2006-Ohio-6160, 871 N.E.2d 613, at ¶ 8-9. We acknowledge that trial courts must balance judicial economies when sentencing offenders. However, on restitution issues, the legislature required courts to hold a hearing on restitution, once challenged, prior to determining the final amount. There are no exceptions.

{¶ 31} In the current case, the trial court imposed restitution at the sentencing hearing in the amount of $14,540. In arriving at that amount, the state represented to the court that the victim owes $7,740 on outstanding hospital bills and will incur $6,800 in future costs to fix the scar on his forehead. No evidence was presented.[1] Asim Sekic disputed the amount of restitution at sentencing. Rather than holding a hearing, the court

---

[1] While the dissent correctly points out that the prosecutor referenced a victim impact statement and an estimate, no hearing was held to introduce the evidence alluded to by the state, the very purpose of the hearing required by R.C. 2929.18 once the amount was challenged. Further, immediately after Sekic's codefendant challenged the amount of restitution, the trial court summarily imposed restitution and ordered the defendants to brief the issue. R.C. 2929.18 does not authorize the trial court to summarily impose restitution over an objection and then offer a briefing schedule to oppose the amount of restitution. Defendants were entitled to a hearing pursuant to the plain language of the restitution statute, and any objection from Sekic at that point would have been illusory.

imposed a definite sum of restitution subject to the defendants filing opposition briefs. That sentencing entry is a final order.

{¶ 32} Sekic filed the within appeal on August 30, 2010. The July 30, 2010 final sentencing order contained all the required elements to constitute a final appealable order. Most important for this discussion, it contained a definite amount of restitution. See *Brewer*, 2010-Ohio-5242. The trial court's sentencing entry, therefore, is a final order that divested the trial court of jurisdiction on all issues regarding the final order, including the amount of restitution. Sekic's only remedy on the restitution issue at that point was through appeal.

{¶ 33} We find the trial court erred by imposing restitution without conducting a hearing to ascertain the amount of loss suffered by the victim once the amount of restitution was challenged by Sekic's codefendant. R.C. 2929.18(A)(1) mandates a hearing prior to the determination of the amount of restitution since the defendants challenged the amount offered by the state. We reverse the order of restitution in the sentencing entry and remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part. Case remanded.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS;
COLLEEN CONWAY COONEY, J., CONCURS IN PART
AND DISSENTS IN PART WITH SEPARATE OPINION


COLLEEN CONWAY COONEY, J., CONCURRING IN PART, DISSENTING IN PART:

{¶ 34} I respectfully dissent on the issue of remanding this case for a restitution hearing. I concur in the affirmance of the remainder of the judgment.

{¶ 35} As the majority correctly points out, it was Sekic's codefendant who challenged the restitution order. Since Sekic's counsel failed to object to the restitution, no hearing is required for the order of restitution within his sentence. And I disagree with the majority's statement that no evidence was presented to support the specific amount of restitution. Even Sekic acknowledged in his appellate brief that a victim impact statement claimed the victim owed $7,740 to the hospital, and a letter from a cosmetic surgeon estimated it would cost $6,800 to repair the scar. Under R.C. 2929.18(A)(1), the court may base the restitution amount on a presentence report, estimates or receipts, and other information. Therefore, the court considered proper documentation in ordering the amount of restitution.