[Cite as *State v. Smith*, 2024-Ohio-2811.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 113455 |
| TAWANN SMITH, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 25, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681060-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mason P. McCarthy, Assistant Prosecuting Attorney, *for appellee*.

Patituce & Associates, Joseph C. Patituce, and Megan M. Patituce, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Tawann Smith appeals his conviction for felonious assault along with two attendant firearm specifications. The conviction arose from his shooting the victim during a fistfight between the victim and Smith and his brother. Smith was

sentenced to three-year terms of imprisonment on each of the two firearm specifications, which are consecutive to each other, and the indefinite two-to-three-year term imposed on the felonious assault conviction.[1] This timely appeal followed.

{¶ 2} On the day of the shooting, recorded from multiple angles by security cameras installed inside the gas station in which the incident took place, the victim was at the counter buying various sundries. A line formed behind him with Smith entering while the victim was finishing the transaction. The line ended at the store's entrance. The victim testified he saw Smith enter but paid him no mind. The two were once friends. A falling out occurred about a year before the shooting over the victim contacting Smith's girlfriend. As the victim exited the store, he had to pass Smith. The video does not depict any obvious physical contact between the two at that time, but the victim thought he may have stepped on Smith's foot under the camera's viewing angle. Smith immediately turned and took at least two steps toward the victim, who had exited the store and had his back toward Smith at the time. After a brief, albeit animated, discussion, Smith aggressively pushed the victim and they both began shoving and wrestling with each other. Other patrons cleared the area. Smith admitted to starting the fight by pushing the victim, although he claimed the victim was verbally aggressive. Shortly after the two were

---

[1] Smith turned down the State's plea offer to dismiss the firearm specifications and plead guilty to a single count of felonious assault in favor of relying on the claim of self-defense at trial. Imposing sentences on two of the firearm specifications, one of which was attendant to a merged offense, is required under the combined application of R.C. 2929.14(B)(1)(g) and *State v. Bollar*, 2022-Ohio-4370. Smith was advised of this fact during the pretrial proceedings.

entangled in an upright wrestling match inside the store, with the victim being pinned up against a cooler, Smith's brother joined in and punched the victim in the back of the head. Smith's brother had seen the fight and came to help Smith, but he did not see how it started.

{¶ 3} Smith, who was armed, dropped his handgun during the initial stage of the fight. When his brother stepped in and started fighting with the victim, Smith picked up the handgun and fired at the victim as he was engaged with Smith's brother. The victim was wounded in the stomach. The responding officer found the victim with his intestine hanging out and administered emergency aid until the ambulance arrived. He survived, but a significant incision from chest to navel was needed to repair the damage caused by the bullet. The victim was unarmed at the time of the fight, a fact that Smith retrospectively conceded in his trial testimony.

{¶ 4} At trial, Smith presented text messages from the victim that were sent eight months before the shooting, around the time the falling out between the two occurred. In those messages, which only included the victim's side of the messaging, several comments were made about the two fighting to resolve their dispute. Although there was mention of a firearm, Smith testified to not understanding that specific statement at trial. There appears to have been no contact between the two until the shooting.

{¶ 5} Smith claimed that as soon as he saw the victim in the gas station, he was in fear for his life in light of the earlier texted threats. He nonetheless remained in the store while the victim was finalizing his purchase. According to Smith, the

victim "shoulder swiped" him as he passed and then stepped on his foot. Smith advanced toward the victim to inquire into the perceived slight. The victim had already exited by that point and was standing outside the store with the door still open. Smith claims the victim was verbally aggressive and said that they should both put their weapons down to fight — the victim unremarkably denied saying anything to that effect. After that brief "discussion," Smith pushed the victim, claiming to do so to create personal space. That act nonetheless started the fistfight. Smith thought the victim was attempting to grab Smith's concealed firearm while the two wrestled against the store's cooler. He stated in response to being asked why he fired the shot: "[b]ecause I feel like if I would have still continued to fight, he could have got my gun and killed me and my family [(who were in the car parked at one of the fuel pumps)]." Thus, to summarize that testimony in context, Smith believed his life was in danger because in the fistfight he instigated, he believed he would be overpowered and his concealed handgun turned against him.

{¶ 6} The video recording of the fight, as viewed by the jury, demonstrates that Smith had possession of his handgun at a distance from the victim, who was then fighting with Smith's brother at the time the shot was fired. Smith's brother and the victim, although wrestling and throwing unaimed punches, did not appear to be getting the better of the other. After the shooting, the fight ended. Smith and his brother fled the store. Smith returned to retrieve his hat, which had fallen off during the tussle. At trial, he claimed to be looking for his car key, which he found in his pocket. In response to the victim's question about being shot, Smith said he

did so in self-defense.  Smith left the scene and called the Garfield Heights Police Department to explain what had just occurred.

{¶ 7}  In the sole assignment of error, Smith claims his conviction, entered following a jury trial, is against the weight of the evidence because he and his brother's testimony established that he acted in self-defense.

{¶ 8}  When evaluating a claim that a jury verdict is against the weight of the evidence, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997); *State v. Jordan*, 2023-Ohio-3800, ¶ 17.  Reversing a conviction based upon the weight of the evidence occurs "'only in the exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 9}  In order to disprove the claim of self-defense, the State must present evidence "'beyond a reasonable doubt that the defendant: (1) was at fault in creating the situation giving rise to the affray; (2) did not have reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm; or (3) violated a duty to retreat or avoid danger.'"  *State v. French*, 2024-Ohio-1256, ¶ 25 (1st Dist.), quoting *State v. Gibson*, 2023-Ohio-1640, ¶ 11 (1st Dist.).  The first and third elements are straightforward and are applied as written.  As to the second

element, "'the test for a bona fide belief of imminent bodily harm is both objective and subjective: whether the defendant's belief is objectively reasonable and whether the defendant subjectively had an honest belief of imminent bodily harm.'" *Id.* at ¶ 26, quoting *State v. Warth*, 2023-Ohio-3641, ¶ 29 (1st Dist.).

{¶ 10} Smith's argument that the trier of fact lost its way in rejecting his assertion of self-defense is solely focused on subjective beliefs to the exclusion of the State's evidence. It is well settled that "'a conviction is not against the manifest weight of the evidence simply because the [trier of fact] rejected the defendant's version of the facts and believed the testimony presented by the state.'" *State v. Jallah*, 2015-Ohio-1950, ¶ 71 (8th Dist.), quoting *State v. Hall*, 2014-Ohio-2959, ¶ 28 (4th Dist.); *see also State v. Kouame*, 2020-Ohio-3118, ¶ 53 (8th Dist.); *State v. Agnew*, 2024-Ohio-874, ¶ 25 (12th Dist.). This is because the trier of fact is free to believe all, some, or none of the evidence presented by the State or defense at trial. *State v. Smith*, 2010-Ohio-4006, ¶ 16 (8th Dist.). We cannot conclude that the jury lost its way.

{¶ 11} The State presented evidence that the victim was not armed, much less brandishing a firearm, at the time of the shooting and was not doing anything other than engaging with Smith and his brother's belligerence, which was limited to fists before Smith used his deadly weapon. Importantly, the video demonstrated, and Smith conceded, that he started the physical altercation by pushing the victim at a time when the two were merely engaged in a heated conversation. Moreover,

Smith dramatically escalated what had been limited to fisticuffs by shooting the victim in the stomach.

{¶ 12} Inasmuch as Smith relies on the fact that the victim may have stepped on his shoe or "brushed his shoulder" as evidence that the victim was the initial aggressor, those acts in and of themselves do not constitute the start of what became a two-on-one fistfight after Smith aggressively confronted and then pushed the victim. *See State v. Sekic*, 2011-Ohio-3978, ¶ 14 (8th Dist.) ("'Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense.'"), quoting *State v. Nichols*, 2002-Ohio-415, (4th Dist.); *see also State v. Walker*, 2021-Ohio-2037, ¶ 19 ("Generally, a defendant, having willingly advanced toward a volatile situation cannot rely on the affirmative defense of self-defense."). The video suggests that had Smith not advanced toward and confronted the victim, no violence would have ensued. The victim was leaving the store when stopped and confronted by Smith. Having willingly advanced to engage in physical combat with someone he subjectively claimed possessed a weapon, Smith cannot rebut the State's proof that he was anything but the initial aggressor. *See Sekic* at ¶ 15. Regardless, even taking into consideration Smith's subjective belief that the two men were armed before Smith initiated the physical fight, this is best characterized as mutual combat between two armed opponents, which generally does not support a claim of self-defense. *See State v. Daley*, 2020-Ohio-4390, ¶ 48 (10th Dist.); *State v. Jacinto*, 2020-Ohio-3722, ¶ 116-117 (8th Dist.).

{¶ 13} And beyond all that, even if Smith's instigation of the fight were ignored, Smith escalated the potential lethality of the altercation by using a deadly weapon in a situation in which the objective evidence did not establish that either he or his brother were in imminent danger of being severely beaten by the victim. *See, e.g., State v. Kendricks,* 2010-Ohio-6041, ¶ 41 (10th Dist.) (conviction for felonious assault is not against the weight of the evidence because "witnesses reasonably could conclude defendant . . . in effect escalated a fist fight into a shoot out" and "exceeded the force he was entitled to use"); *see also State v. Gilcrease,* 2020-Ohio-487, ¶ 73 (8th Dist.) (collecting cases establishing that self-defense is unavailable as a defense where the force used is so disproportionate to the perceived threat that it demonstrates an unreasonable purpose to injure). The jury was free to consider Smith's version of his conduct in comparison to the video evidence demonstrating that a physical altercation was taking place, but none of the combatants were taking any actions consistent with putting anyone else in mortal danger, at least until Smith used the firearm.

{¶ 14} A conviction will not be reversed as being against the manifest weight of the evidence except in an "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins,* 78 Ohio St.3d at 387. This is not that case. The primary evidence introduced against Smith was the video recordings of the entire altercation. The jury was free to draw its own conclusions as to what actually occurred. *State v. Scales,* 2024-Ohio-2171, ¶ 31 (8th Dist.). And although there are arguably some inconsistencies in the State's evidence, none of the inconsistencies

rise to such a level as to impact the overwhelming evidence of Smith's guilt and all those inconsistencies were addressed by the State for the jury's consideration. In short, the trier of fact was free to reject Smith's version of events and he has not demonstrated that in resolving the credibility of the State's evidence, the trier of fact clearly lost its way in finding him guilty of felonious assault or the two attendant firearm specifications.

**{¶ 15}** The conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR