[Cite as *State v. Kouame*, 2020-Ohio-3118.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                    No. 108559

    v.                           :

GUY C. KOUAME,                           :

    Defendant-Appellant.         :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  May 28, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634167-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Anthony T. Miranda and Hannah Smith, Assistant Prosecuting Attorneys, *for appellee.*

John F. Corrigan, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant Guy Kouame[1] brings the instant appeal challenging his convictions and the trial court's sentence for domestic violence and

---

[1] Appellant also goes by the name "Claude."  (Tr. 380.)

endangering children. Appellant argues that his convictions were not supported by sufficient evidence and are against the manifest weight of the evidence, the trial court erred in admitting prejudicial evidence, the trial court erred in denying defense counsel's motion for a mistrial, he was denied a fair trial based on the cumulative-error doctrine, and the trial court abused its discretion in imposing an 18-month jail sentence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant matter arose from an altercation that occurred on October 4, 2018, between appellant and his wife, R.K. (hereinafter "Mother"). This altercation occurred in the presence of their three children: (1) J.H., referenced in the indictment as John Doe, d.o.b. July 3, 2002 (16 at the time of the incident); (2) R.H., referenced in the indictment as Jane Doe I, d.o.b. December 23, 2003 (14 at the time of the incident); and (3) J.K., referenced in the indictment as Jane Doe II, d.o.b. January 31, 2017 (less than 2 years old at the time of the incident).

{¶ 3} The altercation began as a verbal argument that escalated to a physical altercation. The altercation took place inside appellant's and Mother's bedroom. Mother went to bed with J.K. Between 11:30 p.m. and midnight, appellant came into the bedroom and was yelling about money and Mother's financial contributions to the household. As the argument escalated, appellant grabbed Mother's neck and began choking her. Mother was pregnant at the time.

**{¶ 4}** Mother testified, "[appellant] grabbed my throat and he grabbed it very firmly and he was squeezing it." (Tr. 386.) Appellant was blocking mother's airway and at the time she was unable to breathe. Mother began punching appellant in the stomach to defend herself.

**{¶ 5}** Mother's older children, J.H. and R.H., heard the altercation between Mother and appellant escalating. They were standing in the hallway outside of appellant's and Mother's bedroom. They began to record the altercation on their cell phones. J.H. captured an audio recording on his cell phone, and R.H. recorded a video on her cell phone. These recordings were played at trial.

**{¶ 6}** During the altercation, appellant opened the bedroom door and tried to take J.K. downstairs. Mother took J.K. from appellant. Appellant closed and locked the bedroom door. When he did so, J.H. and R.H. were in the hallway outside of the room, and appellant, Mother, and J.K. were inside the bedroom.

**{¶ 7}** Appellant struck Mother in the head with an object she assumed was his cell phone. R.H. testified that she was in the hallway outside of the bedroom and heard "[a] big bang and [Mother] was crying and yelling for [J.H.] and I." (Tr. 455.) J.H. testified that he heard Mother yelling for him to come in the bedroom.

**{¶ 8}** J.H. forcibly broke open the locked bedroom door. Upon entering the room, J.H. and R.H. both observed blood on Mother's head. The children called 911 and reported the incident. Mother was transported to Fairview Hospital where she received treatment for her head injury.

{¶ 9} Appellant left the residence after J.H. and R.H. forcibly entered the bedroom and called 911. He turned himself into the North Olmsted Police Department the day after the physical altercation.

{¶ 10} On November 8, 2018, a Cuyahoga County Grand Jury returned a five-count indictment charging appellant with (1) felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(1); (2) domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), and (3) – (5) endangering children, first-degree misdemeanors in violation of R.C. 2919.22(A). Count 3 pertained to J.H., Count 4 pertained to R.H., and Count 5 pertained to J.K. Appellant pled not guilty to the indictment at his November 14, 2018 arraignment.

{¶ 11} A jury trial commenced on April 2, 2019. J.H., R.H., and Mother, among others, testified on behalf of the state. At the close of the state's case, defense counsel moved for a Crim.R. 29 judgment of acquittal. The trial court denied defense counsel's motion.

{¶ 12} Appellant testified on his own behalf. Appellant denied choking or striking Mother in the head. The defense rested and renewed the Crim.R. 29 motion. The trial court denied the renewed motion.

{¶ 13} The jury returned its verdict on April 5, 2019. The jury found appellant not guilty on Count 1, and guilty on Counts 2-5.

{¶ 14} On April 5, 2019, appellant filed a "post-verdict motion for acquittal of his convictions on Counts 3 and 4." Therein, appellant argued that the state failed to establish that J.H. and R.H. sustained any physical or mental harm from the

incident.  In support of his argument, appellant asserted that the two children were standing on the opposite side of a locked door, neither child was injured, and that their sadness or anger about appellant's assault on their mother did not constitute physical or mental harm.  Appellant cited *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695 (8th Dist.), in support of his argument.[2]

{¶ 15} The trial court held a sentencing hearing on April 8, 2019.  The trial court imposed a six-month jail term on the domestic violence count and all three endangering children counts.  The trial court ordered Counts 2 and 5 to run concurrently with one another.  The trial court ordered Counts 3 and 4 to run consecutively with one another and consecutively to the six-month concurrent sentence on Counts 2 and 5, for an aggregate jail term of one and one-half years (18 months).  Subsequently, on remand from this court, the trial court credited appellant with 158 days of jail-time credit on September 19, 2019.

{¶ 16} On May 13, 2019, appellant filed the instant appeal challenging the trial court's judgment.  He assigns six errors for review:

> I.  Appellant's child endangering convictions in Counts III and IV were not supported by legally sufficient evidence as required by state and federal due process.
>
> II.  All of appellant's convictions were against the manifest weight of the evidence.
>
> III.  The trial court erred in repeatedly allowing the jury to be inundated with prejudicial evidence of sympathy.

---

[2] The trial court did not specifically rule on this motion.  However, the trial court's April 12, 2019 sentencing journal entry provided, in relevant part, "[a]ll motions not specifically ruled on prior to the filing of this judgment entry are denied as moot."

IV. The trial court abused its discretion in lauding a state's witness for his testimony and further erred in overruling appellant's motion for a mistrial.

V. Cumulative error denied appellant a fair trial.

VI. Appellant's sentence was an abuse of discretion.

## II. Law and Analysis

### A. Sufficiency

{¶ 17} In his first assignment of error, appellant argues that his endangering children convictions on Counts 3 and 4 were not supported by sufficient evidence.

{¶ 18} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} In the instant matter, appellant is challenging his endangering children convictions on Count 3, pertaining to his stepson J.H., and on Count 4, pertaining to his stepdaughter R.H.

{¶ 20} Appellant was convicted of endangering children in violation of R.C. 2919.22(A), which provides, in relevant part, "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of

a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."

> Proof of recklessness is also required. *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus ("The existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A)."). A "[s]ubstantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result, or is likely to be of a certain nature." R.C. 2901.22(C). Thus, to support a conviction for child endangering under R.C. 2919.22(A), it must be established, beyond a reasonable doubt, that [the defendant] (1) recklessly (2) created a substantial risk to the health or safety of one or more of his children (3) by violating a duty of care, protection or support.

*Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, at ¶ 25.

{¶ 21} In support of his sufficiency challenge, appellant argues that the state failed to establish that appellant, either by violating a duty of care or omission, endangered J.H. and R.H. In fact, appellant contends that when he locked J.H. and R.H. out of the room, he "took affirmative measures to see that [the children] were not at risk." Appellant's brief at 9.

{¶ 22} Appellant directs this court to *Cohen*, in which a husband and wife engaged in a physical altercation. During the physical altercation, the husband pushed the wife into a wall, causing her to hit her head on a closet. The parties' children witnessed the physical altercation and the head injury sustained by the wife. The husband was convicted at trial of two counts of child endangerment. On appeal, this court reversed the child endangerment convictions, concluding that the

prosecution failed to establish that defendant's conduct created a substantial risk to the health and safety of the children that were present and witnessed the physical altercation. *Id.* at ¶ 30. This court explained, that there was no evidence in the record or claim that the children were "*in any way part of the altercation involving their parent*s," and as a result, there was "no evidence in the record that the children were at any risk of harm — much less a substantial risk of harm — to their mental or physical health or safety" as a result of defendant's actions. (Emphasis added.) *Id.* at ¶ 29. Furthermore, this court concluded,

> Although we have little doubt that (1) hearing one's parents argue about getting a divorce and leaving the family's home and (2) viewing the type of inappropriate and irresponsible behavior exhibited by the parents in this case could have an emotional impact on a child, we cannot say, based on the record before us, that the city met its burden of proof. Simply because the two children were present in the home at the time of the altercation, may have witnessed part of the dispute and may have been (understandably) upset or confused by their parents' words and actions does not establish that Cohen violated a duty of care, protection or support to his children or that he, with heedless indifference to the consequences of his actions, perversely disregarded a known risk and thereby created a substantial risk to the health or safety of his children. As such, the evidence was insufficient to support Cohen's conviction for child endangering pursuant to R.C. 2919.22(A).

*Id.* at ¶ 30.

{¶ 23} After reviewing the record in this case, we find *Cohen* to be distinguishable. Unlike the children in *Cohen*, J.H. and R.H. were not merely present in the home or witnesses to the argument and physical altercation between appellant and Mother — they were involved in the altercation.

{¶ 24} First, R.H. became involved in the altercation after appellant choked Mother inside the bedroom. Mother testified that after appellant choked her and she punched appellant in the stomach to defend herself, R.H. came into the bedroom and asked Mother if she was "good." (Tr. 385.)

{¶ 25} R.H. testified that appellant opened the bedroom door and Mother was holding J.K. inside the room. Appellant took J.K. from Mother and tried to leave the bedroom to go downstairs. Mother would not let appellant go downstairs with J.K. R.H. asserted that appellant was yelling at Mother, "you're not taking my baby," and Mother was yelling at appellant, "I want my baby back, you're not taking him downstairs." (Tr. 454.) J.H. testified that Mother took J.K. back from appellant and handed J.K. to R.H.

{¶ 26} The evidence presented by the state demonstrated that after Mother took J.K. from appellant and handed him to R.H., appellant acted aggressively towards R.H. while she was holding J.K. R.H. testified that she was holding J.K. and he was crying. At this point, appellant approached R.H., coming within approximately two-and-one-half feet of her and J.K., and told R.H. to "get the F out of my room." (Tr. 463.) R.H. asserted that she felt scared for herself when appellant got in her face and ordered her to leave the bedroom. Mother testified that after she took J.K. from appellant and handed him to R.H., appellant began yelling and swearing at R.H., telling her to "Get the F out, get the F out" of the bedroom. (Tr. 389.) Finally, regarding R.H.'s involvement in the altercation, J.H. testified that

R.H. tried to break open the bedroom door from the hallway, but was unable to do so. (Tr. 344.)

{¶ 27} Second, J.H. became involved in the physical altercation between appellant and Mother when he heard Mother calling out for him inside the bedroom and he broke down the bedroom door out of fear for Mother's safety. J.H. testified about what transpired after appellant locked the bedroom door:

> Afterwards my mom starting yelling for me to come in. And so [R.H.] tried to bang open the door, and she couldn't do it, [R.H.] said for me to go ahead and bang open the door.
>
> So I rushed right through the door.

(Tr. 342.)

{¶ 28} When J.H. broke down the door, he saw Mother's head bleeding. J.H. explained,

> [appellant] was just standing there next to [Mother], with her head just bleeding, gushing blood around her forehead like near her eye. And there was a lot of blood everywhere. And I think she had it on her hands and — so I called the — the cops were — I pretty much pushed [appellant] down on the bed and said what — and I was yelling: What did you do to my mother?

(Tr. 344.)

{¶ 29} Accordingly, the record reflects that J.H. and R.H. were not merely bystanders or witnesses to the physical altercation. Based on J.H.'s and R.H.'s involvement and participation in the physical altercation between appellant and Mother, appellant's reliance on *Cohen* is misplaced.

{¶ 30} We further find this case to be distinguishable from *State v. Jackson-Williams*, 8th Dist. Cuyahoga Nos. 108516 and 108611, 2020-Ohio-1118, in which this court applied the *Cohen* rationale. *Jackson-Williams* involved a verbal and physical altercation between the defendant-appellant and his wife in a parking lot. During the altercation, the defendant attempted to push the victim into the car and threatened to choke her and drag her across the ground if she did not get out of his face. *Id.* at ¶ 8. The defendant also grabbed the victim and twisted her arm behind her back, and held the victim in this position for several minutes. The parties continued to argue, at which point the defendant grabbed and squeezed the victim's other hand, causing her to scream out. During the altercation, the victim sustained sprains to both of her hands, her left hand was swollen, and she sustained cuts between her fingers.

{¶ 31} The altercation took place outside of the vehicle in which the parties' two children were seated. The two children witnessed the altercation. Defendant was convicted of child endangerment in violation of R.C. 2919.22(A). On appeal, defendant challenged his endangering children convictions, arguing that there was no evidence that his actions posed any risk to the health or safety of his children. Defendant asserted that the children were secured in their car seats during the altercation with the victim, and as a result, they were never endangered. *Id.* at ¶ 28.

{¶ 32} The *Jackson-Williams* court applied the *Cohen* rationale and determined that there was no evidence that defendant's aggressive behavior toward

the victim created a substantial risk to the health and safety of the children inside the vehicle:

> [t]he struggle between Jackson-Williams and [the victim] was relatively brief and occurred outside of [the victim's] car while the children were safely secured inside the car. Although witnessing their parents fight probably had a negative emotional impact on the children, their mere presence at the scene of their parents' domestic dispute did not create a substantial risk to their health or safety. Therefore, there is insufficient evidence in the record to sustain Jackson-Williams's two child-endangering convictions.

*Id.* at ¶ 35.

{¶ 33} After reviewing the record, we find *Jackson-Williams* to be distinguishable. As noted above, unlike *Jackson-Williams*, J.H. and R.H. were not merely witnesses to or present at the scene of the physical altercation between appellant and Mother. The children were directly involved in the physical altercation. Furthermore, although J.H. and R.H. were locked outside of the bedroom for a period of time during the altercation, they were not "safely secured" in the hallway or out of harm's way during the entirety of the altercation.

{¶ 34} As noted above, when R.H. was holding J.K. to prevent appellant from taking J.K. downstairs, appellant aggressively approached her, got in her face, and threatened her to leave the bedroom. The evidence presented at trial also demonstrates that after appellant locked them out of the bedroom, J.H. and R.H. were so concerned for the safety of Mother that they felt they had no choice but to exert enough force using their own bodies to break into the bedroom to save Mother from further abuse.

{¶ 35} Based on J.H.'s and R.H.'s involvement in the physical altercation between appellant and Mother, we find that the state's evidence, if believed, established that appellant's actions created a substantial risk of harm to the *physical* health or safety of J.H. and R.H. We further find that appellant's actions created a substantial risk of harm to the *mental or emotional* health or safety of J.H. and R.H.

{¶ 36} In *State v. Jay*, 8th Dist. Cuyahoga No. 91827, 2009-Ohio-4364, *remanded on other grounds*, 130 Ohio St.3d 239, 2011-Ohio-5161, 957 N.E.2d 276, this court affirmed the defendant-father's child endangering conviction pertaining to his nine-year-old son, J.W., who witnessed defendant sexually abuse his three-year-old sibling. In rejecting the defendant's argument that there was insufficient evidence to support his conviction of child endangerment, this court recognized that the state's case was predicated on the substantial risk of emotional harm that defendant's actions caused to J.W., who witnessed the defendant sexually abuse his younger brother. *Id.* at ¶ 15. This court concluded that the state presented sufficient evidence to establish that:

> (1) J.W. witnessed an act of sexual abuse being performed on his three-year old brother perpetrated by appellant; (2) while J.W. was in the care and custody of appellant; (3) that appellant owed J.W. a duty of care and custody; and (4) that this created a substantial risk to the health or safety of J.W., there is sufficient evidence to support appellant's conviction for child endangerment. *Sexual abuse creates a substantial risk to the health and safety of a child, whether victim or witness.*

(Emphasis added.) *Id.* at ¶ 17.

{¶ 37} After reviewing the record, although J.H. and R.H. were not victims of physical abuse, we find that *Jay* rationale applies to the physical abuse and domestic violence involved in this case that was witnessed by J.H. and R.H. Here, the state presented sufficient evidence to establish that (1) J.H. and R.H. witnessed an act of physical abuse or domestic violence appellant perpetrated against Mother, (2) J.H. and R.H. witnessed the act of physical abuse or domestic violence while they were in the care and custody of appellant, (3) appellant owed J.H. and R.H. a duty of care and custody, and (4) this created a substantial risk to the emotional health or safety of J.H. and R.H.

{¶ 38} Both J.H. and R.H. were in their bedrooms when appellant began yelling at Mother in their bedroom. Both children came out of their bedrooms and began recording the altercation as it escalated. R.H. contemplated calling 911 *before* appellant struck Mother in the head. She asked J.H. if he thought they should intervene or call 911. (Tr. 453.)

{¶ 39} J.H. explained why he began recording the altercation between appellant and Mother: "I felt like something bad might happen later on, I wasn't really sure." (Tr. 336.) J.H. continued, "I was a little nervous, so like I was — if anything bad did happen I would have called the cops, and I wanted to at least have evidence that — for yelling and stuff." (Tr. 338.)

{¶ 40} The testimony of J.H. and R.H. establishes that both children were so concerned about the escalating nature of the altercation between appellant and Mother that they began recording the altercation on their cell phones. Both J.H. and

R.H. contemplated intervening in the escalating altercation and calling police before appellant struck Mother in the head.

{¶ 41} In *Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, it was unclear where the children were at in the house at the time the victim sustained injuries to her nose and forehead, and whether the children were present when the victim sustained her injuries. *Id.* at ¶ 7, fn. 2. In this case, J.H. and R.H. were present when appellant choked Mother and struck her in the head.

{¶ 42} J.H. and R.H. were in the hallway outside of the bedroom when appellant choked Mother. J.H. testified that he observed red markings on Mother's neck. Mother testified that R.H. entered the bedroom to check on her after appellant choked her. Both children heard the initial physical altercation that transpired inside the bedroom: appellant choking Mother, and Mother punching appellant in the stomach to defend herself. Similarly, both children heard the physical altercation that transpired inside the bedroom after appellant locked them in the hallway: appellant striking Mother in the head. After they forced their way into the bedroom, both J.H. and R.H. observed blood emanating from Mother's head.

{¶ 43} In *Jackson-Williams*, 8th Dist. Cuyahoga Nos. 108516 and 108611, 2020-Ohio-1118, where the children were secured inside a vehicle and the parents engaged in a physical fight outside the vehicle in the parking lot, the victim sustained hand injuries including sprains, swelling, and cuts, during the altercation. In this case, unlike *Jackson-Williams*, the head injury sustained by Mother was much more readily apparent to J.H. and R.H. Both J.H. and R.H. testified that they observed

Mother's head bleeding when they forcibly entered the bedroom. J.H. and R.H. also confirmed that they saw the treatment Mother received for her head injury — six staples — when she returned from the hospital. Accordingly, based on (1) J.H.'s and R.H.'s presence for the entirety of the physical altercation between appellant and Mother, (2) the fact that both children heard the physical altercation that was occurring inside the bedroom, and (3) the fact that the children observed the red marks on Mother's neck, blood flowing from Mother's head, and the staples Mother received for her head injury, we find that appellant's actions created a substantial risk of harm to the *mental or emotional* health or safety of J.H. and R.H.

{¶ 44} Finally, appellant appears to argue that J.H. and R.H. were at fault for creating any substantial risk to their health or safety because they "interjected themselves into the situation." Appellant's brief at 10. We unequivocally and categorically reject appellant's argument that J.H. and R.H. were in any way at fault for the events that transpired. Both children testified at trial that they intervened in the altercation between appellant and Mother because they were worried about Mother and feared for her safety.

{¶ 45} For all of the foregoing reasons, and based on J.H.'s and R.H.'s involvement in the physical altercation between appellant and Mother, we find that the evidence presented at trial by the state, if believed, sufficiently established that appellant's actions created a substantial risk of harm to the mental and physical health or safety of J.H. and R.H. Accordingly, appellant's endangering children convictions on Counts 3 and 4 are supported by sufficient evidence in the record.

{¶ 46} Appellant's first assignment of error is overruled.

## B. Manifest Weight

{¶ 47} In his second assignment of error, appellant argues that his convictions for domestic violence and endangering children are against the manifest weight of the evidence.

{¶ 48} In contrast to sufficiency of the evidence, "weight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

### 1. Counts 3 and 4

{¶ 49} First, regarding his endangering children convictions on Counts 3 and 4, appellant appears to argue that these convictions were against the manifest weight

of the evidence because he did not go after J.H. or R.H., did not throw anything at them, or commit a separate assault against either child.  Appellant's argument is misplaced.

{¶ 50} As noted above, the state was not required to demonstrate that appellant assaulted or attempted to assault either J.H. or R.H.  Rather, the state had to demonstrate that appellant's actions created a substantial risk of harm to the health or safety of J.H. and R.H.

{¶ 51} Appellant also appears to argue that the evidence presented at trial established that he did not endanger J.H. or R.H., but, in fact, established that appellant protected these children during the altercation with Mother: "[t]he undisputed facts of this case are that Appellant did everything in his power to separate [J.H. and R.H.] from the spousal dispute."  Appellant's brief at 12.  As noted above, appellant contends that he "took affirmative measures to see that [the children] were not at risk."  Appellant's brief at 9.  Once again, appellant appears to blame J.H. for intervening in the dispute between him and Mother.  Appellant's argument is entirely unsupported by the record.

{¶ 52} To the extent that appellant contends that he "protected" the children by locking them out of the bedroom, the record reflects that J.H. and R.H. were not locked out of the bedroom for the entirety of the altercation between appellant and Mother.  J.H. and R.H. were not separated from the altercation, they were directly involved in the altercation, and intervened out of fear for Mother's safety.

{¶ 53} Nevertheless, appellant's convictions are not against the manifest weight of the evidence merely because the jury rejected the defense's theory that appellant took affirmative actions to protect and ensure the safety of J.H. and R.H., and found the state's theory of the case — that appellant's actions during the altercation created a substantial risk to the health and safety of J.H. and R.H. — to be more believable. "'[A] conviction is not against the manifest weight of the evidence simply because the jury rejected the defendant's version of the facts and believed the testimony presented by the state.'" *State v. Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, ¶ 71, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 28.

{¶ 54} The jury did not lose its way in resolving the conflicting theories based on the evidence presented at trial. Accordingly, appellant's second assignment of error is overruled with respect to his endangering children convictions on Counts 3 and 4.

### 2. Counts 2 and 5

{¶ 55} Second, in support of his manifest weight challenge on Counts 2 and 5, appellant appears to argue that Mother was not a credible witness because she provided conflicting testimony. Specifically, appellant contends that although Mother testified that appellant turned the bedroom lights off after locking the bedroom door, neither J.H. nor R.H. testified that the bedroom lights were off when they forcibly entered the room, and the cell phone video recorded by R.H. contradicts Mother's testimony about the bedroom lights being off.

{¶ 56} Mother testified on direct examination that appellant locked the bedroom door and turned off the lights in the bedroom. (Tr. 390.) Mother acknowledged on cross-examination that she did not mention appellant turning off the lights in her statement to medical personnel or the police. There was no testimony presented at trial regarding who, if anyone, turned the bedroom lights back on after they had been turned off by appellant.

{¶ 57} Although R.H. recorded the altercation on her cell phone, she was in the hallway when appellant purportedly turned the bedroom lights off. J.H. testified on cross-examination that to the best of his recollection, the bedroom lights stayed on during the entire altercation. (Tr. 263.)

{¶ 58} Appellant's convictions are not against the manifest weight of the evidence based on any inconsistencies in the trial testimony regarding whether the lights in the bedroom had been turned off when appellant struck Mother in the head. Mother testified that the altercation began between 11:30 p.m. and midnight. Therefore, there would not have been any natural light coming into the house during the altercation. The important aspects of Mother's testimony remained largely consistent over time, including appellant choking her, and striking her in the head inside the bedroom while she was holding J.K.

{¶ 59} Appellant appears to argue that Mother's head injury was not caused by appellant striking Mother with a cell phone, but rather caused when Mother was struck by the door that J.H. forced open. Appellant testified at trial that he did not strike Mother in the head.

{¶ 60} Mother testified at trial that appellant struck her in the head with an object he was holding in his hand, and that appellant struck her before the children forcibly entered the room. J.H. testified that he did not hear a noise as he forced the door open and the door swung into the bedroom. The only noise he heard when he forced the door open was crying. J.H. asserted that he did not feel as if he hit anyone inside the bedroom when he forced the door open. He heard Mother scream before he forced his way into the bedroom. R.H. testified that she heard a "bang" inside the bedroom after which Mother cried out for her and J.H. R.H. heard this "bang" before J.H. forcibly opened the bedroom door.

{¶ 61} As noted above, appellant's convictions are not against the manifest weight of the evidence merely because the jury rejected the defense's theory that Mother's head injury was caused by the bedroom door, and found Mother's testimony — that appellant struck her in the head with an object — to be more believable than appellant's testimony. *See Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, at ¶ 71. The jury did not lose its way in resolving the conflicting theories based on the evidence presented at trial.

{¶ 62} Finally, appellant appears to argue that Mother's account of the incident was not credible because she had breakfast the next morning and ran errands with appellant.

{¶ 63} Mother testified on direct examination that the morning after the altercation, appellant called her and asked her to bring him his work cell phone, his

socks, and his shoes. Appellant told Mother that he was going to turn himself in. Mother explained,

> I walked up to the local dollar store that was by our house, Dollar General, where I met [appellant]. I then got in the driver's side.
>
> I had a doctor's appointment that day for our baby. And [appellant] wanted to go with us — me, to hear his daughter's heartbeat for the last time before he turned himself in.
>
> But I told him, "We're not running Claude, we're not running."

(Tr. 398.) After the doctor's appointment, Mother drove appellant to the North Olmsted Police Department where appellant was detained.

{¶ 64} Appellant testified on direct examination that on the way to the police station, he and Mother stopped at Dunkin' Donuts where they had coffee, breakfast, and talked. (Tr. 619.) Appellant alleged that they had an agreement to go into the police station and tell the officers that Mother's injuries were caused by an accident. (Tr. 622.)

{¶ 65} The testimony of Mother was supported by the testimony of J.H. and R.H., and consistent with the video recording captured by R.H.'s cell phone, and consistent with the audio recording captured by J.H.'s cell phone. Mother's testimony about appellant choking her is consistent with J.H.'s testimony that he observed red markings on Mother's neck.

{¶ 66} For all of the foregoing reasons, we find no basis upon which to conclude that appellant's domestic violence and child endangering conviction pertaining to J.K. are against the manifest weight of the evidence. This is not an

exceptional case in which the evidence weighs heavily against appellant's convictions or that the jury clearly lost its way in finding appellant guilty.

{¶ 67} Appellant's second assignment of error is overruled with respect to his domestic violence conviction on Count 2 and his endangering children conviction pertaining to J.K. on Count 5.

## C. Evidence of Sympathy

{¶ 68} In his third assignment of error, appellant argues that the trial court erred by "allowing the jury to be inundated with prejudicial evidence of sympathy." Appellant's brief at 15. Appellant specifically challenges aspects of J.H.'s, R.H.'s, and Mother's trial testimony, arguing that the testimony was irrelevant and improperly presented to inflame the passions of the jury.

{¶ 69} Pursuant to Evid.R. 402, only relevant evidence is admissible. Evid.R. 401 defines "relevant evidence" as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶ 70} The admission of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Accordingly, this court's review is limited to determining whether the trial court's evidentiary rulings were unreasonable,

arbitrary, or unconscionable. *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

{¶ 71} First, appellant takes issue with the testimony of J.H. and R.H. regarding their observations during and after the incident. J.H. testified that when Mother returned from the hospital, he saw six staples in Mother's head. J.H. testified, over defense counsel's objection, about how he felt when he saw his Mother's head injury: "I was just happy that she was okay. I was happy that everything was all right, that she was back home the very same night that she got injured. I was glad that [the medical staff] helped her get all fixed up, you know, stitches and stuff. I was upset because it looked like it hurt." (Tr. 356.) Appellant argues that J.H.'s testimony was not relevant and a "tactical ploy for the hearts of the jurors." Appellant's brief at 15.

{¶ 72} The record reflects that defense counsel elicited testimony from J.H. regarding how he felt about his mother's injuries on cross-examination:

> [Defense Counsel]: And the idea of your mother being injured, that probably hurts you a great deal, am I right?

> [J.H.]: Yeah.

(Tr. 357.)

{¶ 73} After the video that R.H. recorded on her cell phone was played in court, the prosecutor asked R.H. if it was hard for her to watch the video. R.H. simply responded in the affirmative, "[y]es." (Tr. 406.) R.H. also testified that she felt "sad" when her and J.H. forced their way into the bedroom and she saw blood

on Mother's head. (Tr. 456.) Defense counsel did not object to the prosecutor's questions or R.H.'s responses, and as a result, appellant has waived all but plain error with respect to this challenged testimony.

{¶ 74} Pursuant to Crim.R. 52(B), plain errors or defects that affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error is only to be taken under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error does not exist unless it can be shown that but for the error, the outcome of the trial would clearly have been different. *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 75} R.H. testified that when Mother returned from the hospital, she noticed Mother received some treatment to her head. R.H. testified, over defense counsel's objection, that she was "sad" when she saw Mother received treatment at the hospital for her head injury. (Tr. 465.)

{¶ 76} After reviewing the record, we are unable to conclude that the trial court abused its discretion or committed plain error in permitting the testimony of J.H. and R.H. with which appellant takes issue. The state's theory of the case regarding the child endangerment offenses charged in Counts 3 and 4 was that appellant created a substantial risk to the emotional or mental health and safety of J.H. and R.H. when he assaulted Mother while the children were present. Accordingly, the children's testimony about how they felt as the verbal argument

was escalating, during the physical altercation, and immediately after the physical altercation, was arguably relevant to the determination of whether appellant's conduct created a substantial risk to the health or safety of the children.

{¶ 77} Second, appellant challenges aspects of Mother's testimony. Mother testified that the altercation began when appellant came into the bedroom and started talking about money, the fact that he makes more money than Mother, and suggesting that Mother does not contribute enough to the family. Mother testified, over defense counsel's objection, about how she felt about appellant's comments about money: "[w]ell, I always felt I was contributing to the household. I always — so as a wife should contribute. I can't necessarily make more or as much money as him if what my employer offers me — what they pay me is what they pay me. And that's what I brought. What I could bring in is what I supplied to the family." (Tr. 384.) Appellant contends that the state's line of questioning was "an attempt to make the jurors want to drive a stake through the heart of a Neanderthal." Appellant's brief at 16.

{¶ 78} We are unable to conclude that the trial court abused its discretion in permitting Mother's testimony in this respect. Mother's testimony was relevant background information, explaining how the altercation started in the first place. Furthermore, J.H. testified that when he was in his bedroom, he heard both appellant and Mother yelling. The jury could have reasonably inferred from this testimony that Mother was upset about appellant's financial comments.

{¶ 79} Mother testified, over defense counsel's objection, about whether she feared for the safety of her children during the altercation. Mother answered affirmatively, "[y]es" and "[a]bsolutely." (Tr. 399.) As noted above, the endangering children offenses on Counts 3 and 4 were predicated, in part, on whether appellant's conduct created a substantial risk to the emotional or mental health and safety of J.H. and R.H. Accordingly, Mother's testimony in this respect was relevant, and the trial court did not abuse its discretion in overruling defense counsel's objection.

{¶ 80} Mother testified about the threats appellant made to her during the argument, including appellant's statement "I'm going to knock you out" to Mother. (Tr. 388.) Mother asserted that she felt uncomfortable and terrified when she heard this threat. Mother opined, over defense counsel's objection, that appellant could, in fact, knock her out. Mother testified, over defense counsel's objection, that it was "painful" to hear the recording of the 911 call that was played at trial.

{¶ 81} After reviewing the record, we are unable to conclude that the trial court abused its discretion in permitting Mother's testimony. Although Mother's opinion testimony about whether appellant could "knock her out" is arguably irrelevant to the elements of the felonious assault and domestic violence offenses charged in Counts 1 and 2, any error in the trial court's admission of this testimony was, at best, harmless error pursuant to Crim.R. 52(A).

> An error is harmless if it did not affect the accused's "substantial rights." Crim.R. 52(A). Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily a trial free of all error. *See United States v. Hasting*, 461 U.S. 499, 508-509, [103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)]. Before

constitutional error can be considered harmless, however, a reviewing court must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, [87 S.Ct. 824, 17 L.Ed.2d 705 (1967)]. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*[, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, *vacated on other grounds*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978)].

*State v. Johnson*, 8th Dist. Cuyahoga No. 80857, 2003-Ohio-1826, ¶ 24.

{¶ 82} In the instant matter, we are unable to find that the aforementioned testimony of J.H., R.H., and Mother with which appellant takes issue contributed to appellant's domestic violence conviction and child endangerment conviction pertaining to J.K. The record contains substantial and independent evidence supporting appellant's convictions on Counts 2 and 5.

{¶ 83} Finally, the trial court provided multiple instructions to the jury to refrain from being influenced by bias or sympathy. In its preliminary instructions, the trial court instructed the jury, "[y]ou must not be influenced in your decision by sympathy, prejudice, or passion toward any party, witness, or attorney in this case." (Tr. 313.) Following the presentation of evidence, the trial court instructed the jury, "in strict keeping with your oaths you must refuse absolutely to have your judgment influenced by sympathy, bias or prejudice, either for or against the government or the defendant in this case." (Tr. 696.) This court presumes that the jury heeded the trial court's instructions. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 157.

**{¶ 84}** For all of the foregoing reasons, appellant's third assignment of error is overruled.

### D. Trial Court's Remarks and Motion for Mistrial

**{¶ 85}** In his fourth assignment of error, appellant argues that the trial court abused its discretion in "lauding [J.H.] for his testimony" and denying defense counsel's motion for a mistrial. Appellant's brief at 19.

**{¶ 86}** First, appellant takes issue with the trial court's comments to J.H. following his testimony on redirect examination. Before dismissing J.H., the trial court made the following remarks to J.H.:

> Before you leave, I want to tell you something: I want to tell you how much I appreciate you coming and sharing your story with us. And I don't want you to leave with a bad impression about the courtroom, okay?
>
> * * *
>
> It's a search for the truth. So [the prosecutor] has to present certain things, so that [the jury] can see it and evaluate it. And we're not here to try and make you uncomfortable.
>
> * * *
>
> I appreciate you coming and I think you're very brave. I hope one day you're a lawyer and you can take my seat, okay?

(Tr. 372.)

**{¶ 87}** Appellant argues that the trial court "invaded the province of the jury by declaring J.H. a brave witness" and portrayed defense counsel as obstructing the search for the truth. In this appeal, appellant appears to argue that the trial court's

remarks conveyed to the jury that only the prosecutor's questioning and arguments were important.

{¶ 88} Initially, we find no merit to appellant's argument that the trial court's remarks to J.H. were in any way disparaging, either explicitly or implicitly, to defense counsel. The trial court gave J.H. — not the jury — a brief, one sentence explanation of how a criminal trial works: the prosecutor presenting evidence to the jury, and the jury evaluating that evidence.

{¶ 89} Furthermore, after reviewing the record, we are unable to conclude that the trial court's remarks were unreasonable, arbitrary, or unconscionable. J.H. was 16 years old at the time of trial. He came into court and testified openly about a situation that was at the very least upsetting and uncomfortable, if not traumatic — a physical altercation between his mother and stepfather that escalated to a point where he feared for the safety of his mother and felt compelled to intervene. To make matters even more uncomfortable for J.H., Mother was in the process of divorcing appellant. (Tr. 438.) Under these circumstances, the trial court did not abuse its discretion in thanking J.H. for testifying openly and candidly.

{¶ 90} Second, appellant argues that the trial court abused its discretion in denying defense counsel's motion for a mistrial. Defense counsel moved for a mistrial based on the trial court's statements to J.H. following his testimony. In support of the motion, defense counsel argued, "this is an adversarial witness, he's a critical eyewitness in this case, but the way you talked him up about being brave and, you know, demonstrating that you were proud of him, you know, I think that

prejudiced [appellant]. I understand you were just being polite to him, but to do so right in front of the jury, Judge, it does prejudice my client." (Tr. 375.)

{¶ 91} The trial court denied defense counsel's motion for a mistrial, concluding, in relevant part,

> Well, I took into consideration that [J.H.] was a young person, I saw his struggle as he was testifying. I thought that the video was graphic. I did not want him to leave with a bad impression, so I made [the remarks].
>
> I do not think that this prejudiced your client at all. And I never said anything about the basis of the truth or untruth of what he testified to.

(Tr. 375-376.)

{¶ 92} The trial court should declare a mistrial "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). A trial court enjoys broad discretion in ruling on a motion for a mistrial. *State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937 (2001). This court will not reverse a trial court's ruling on a motion for a mistrial absent an abuse of that discretion. *State v. Benson*, 8th Dist. Cuyahoga No. 87655, 2007-Ohio-830, ¶ 136.

{¶ 93} After reviewing the record, we find no basis upon which to conclude that the trial court's ruling denying defense counsel's motion was unreasonable, arbitrary, or unconscionable. As noted above, given the uncomfortable, if not traumatic circumstances of this case, the trial court's remarks to J.H. were not inappropriate. The trial court did not comment on J.H.'s credibility or the veracity

of his trial testimony. Because this court is confined to a written transcript of the proceedings, we defer to the trial court's determination that J.H. was struggling at points during his testimony.

{¶ 94} For all of the foregoing reasons, appellant's fourth assignment of error is overruled. The trial court did not abuse its discretion in issuing the remarks to J.H. following his testimony or in denying defense counsel's motion for a mistrial.

### E. Cumulative Error

{¶ 95} In his fifth assignment of error, appellant argues that the cumulative effect of the trial court's errors denied him a fair trial.

{¶ 96} Pursuant to the cumulative-error doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial, even though each of the errors does not individually constitute cause for reversal. *State v. Obermiller*, 8th Dist. Cuyahoga No. 101456, 2019-Ohio-1234, ¶ 52, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. The cumulative-error doctrine is inapplicable, however, when the alleged errors are found to be harmless or nonexistent. *Id.*, citing *id.*

{¶ 97} Based on our resolution of appellant's third and fourth assignments of error, the cumulative-error doctrine is inapplicable in this case. The trial court did not abuse its discretion or commit prejudicial error in admitting irrelevant, victim impact evidence, and the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial.

**{¶ 98}** Appellant's fifth assignment of error is overruled.

## F. Trial Court's Sentence

**{¶ 99}** In his sixth assignment of error, appellant argues that the trial court abused its discretion in sentencing appellant to a jail term of 18 months.

**{¶ 100}** As an initial matter, we note that it is unclear whether appellant is still serving his 18-month jail sentence. Appellant was sentenced to 18 months in jail during the April 8, 2019 sentencing hearing. On September 19, 2019, the trial court granted appellant 158 days of jail-time credit. The trial court's docket indicates that appellant was "leaving jail" on April 24, 2020.

**{¶ 101}** In the event that appellant has completed service of his 18-month jail term, his sixth assignment of error would be moot. *See State v. Wright*, 8th Dist. Cuyahoga No. 83781, 2004-Ohio-4077, ¶ 18 ("Any appeal of a sentence already served is moot."); *see also State v. Santiag*o, 8th Dist. Cuyahoga No. 101612, 2015-Ohio-1301, ¶ 9 ("[B]ecause [the defendant] is no longer serving his sentence, there is no remedy this court may provide."). *Accord State v. Gates*, 8th Dist. Cuyahoga No. 108067, 2019-Ohio-4783, ¶ 3.

**{¶ 102}** In the event that appellant has not completed service of his 18-month sentence, we find appellant's sixth assignment of error fails on the merits.

> Misdemeanor sentencing is governed by R.C. 2929.21 through 2929.28. *N. Olmsted v. Rock*, 8th Dist. Cuyahoga No. 105566, 2018-Ohio-1084, ¶ 32. In imposing a sentence for a misdemeanor conviction, a trial court must consider the overriding purposes of misdemeanor sentencing, "to protect the public from future crime by the offender and others and to punish the offender," set forth in R.C. 2929.21, and the factors set forth in R.C. 2929.22(B) regarding the

appropriate method of achieving those purposes. *Lakewood v. Dobra*, 8th Dist. Cuyahoga No. 106001, 2018-Ohio-960, ¶ 9.

A trial court enjoys broad discretion in imposing sentence on a misdemeanor offense. *Dobra* at ¶ 8, citing *Cleveland v. Meehan*, 8th Dist. Cuyahoga No. 100202, 2014-Ohio-2265, ¶ 7. Accordingly, this court reviews a trial court's misdemeanor sentence for an abuse of discretion. *Cleveland v. Peoples*, 8th Dist. Cuyahoga No. 100955, 2015-Ohio-674, ¶ 13. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

*State v. Gaines*, 8th Dist. Cuyahoga No. 106784, 2019-Ohio-639, ¶ 20-21.

{¶ 103} A trial court abuses its discretion when it imposes a sentence for a misdemeanor conviction without considering the sentencing factors under R.C. 2929.21 and 2929.22. *Dobra* at ¶ 10, citing *Maple Hts. v. Sweeney*, 8th Dist. Cuyahoga No. 85415, 2005-Ohio-2820, ¶ 7. R.C. 2929.21 and 2929.22 are not, however, fact-finding statutes. Accordingly, a trial court need not make factual findings on the record regarding its consideration of the factors set forth in the statutes. *Sweeney* at ¶ 8. "[W]hen a misdemeanor sentence is within the statutory limits, the trial court is presumed to have considered the required factors [under R.C. 2929.22], absent a showing to the contrary by the defendant." *Id.*

{¶ 104} In the instant matter, appellant appears to argue that the trial court imposed a jail term of two years during the sentencing hearing, but reduced the jail term in its sentencing journal entry to 18 months. Appellant's argument is unsupported by the record.

{¶ 105} During the sentencing hearing, the trial court sentenced appellant to 180 days in jail on Count 2, and 180 days in jail on the three child endangering

convictions (Counts 3, 4, and 5). (Tr. 760.) The trial court ordered the 180-day sentences on Counts 3, 4, and 5 to run consecutively with one another. (Tr. 760.) Contrary to appellant's assertion, the trial court did not order the 180-day sentence on Count 2 to also run consecutively. Accordingly, the trial court imposed an aggregate jail term of 18 months in open court during the sentencing hearing. The trial court's April 12, 2019 sentencing journal entry provides, in relevant part,

> [t]he court considered all required factors of the law. * * * [Appellant] is sentenced to the Cuyahoga County jail for a term of 18 month(s). Count 2 — 6 months. Count 3 — 6 months. Count 4 — 6 months. Count 5 — 6 months. Count 2 and Count 5 are concurrent. Count 3 and Count 4 are consecutive to each other and consecutive to Count 2 and Count 5.

{¶ 106} Appellant's convictions on Counts 2, 3, 4, and 5 were first-degree misdemeanors. Pursuant to R.C. 2929.24(A)(1), a jail term for a misdemeanor of the first degree shall not exceed 180 days (six months). The trial court sentenced appellant to 180 days in jail on all four convictions. Accordingly, the trial court's sentence was within the permissible statutory range under R.C. 2929.24(A)(1).

{¶ 107} Because the trial court's sentence was within the permissible statutory range, this court presumes that the trial court considered the sentencing factors set forth in R.C. 2929.21 and 2929.22. *See Sweeney*, 8th Dist. Cuyahoga No. 85415, 2005-Ohio-2820, at ¶ 8; *Dobra*, 8th Dist. Cuyahoga No. 106001, 2018-Ohio-960, at ¶ 10. Furthermore, appellant has failed to demonstrate that the trial court failed to consider the sentencing factors at sentencing.

{¶ 108} Appellant appears to argue that the trial court did not consider the factors under R.C. 2929.21 and 2929.22, and that the trial court had made "a preordained decision to impose the max[imum sentence]." Appellant's brief at 27. In support of this allegation, appellant references the two-year sentence purportedly imposed by the trial court during the sentencing hearing. As noted above, the record reflects that the trial court imposed an 18-month jail term, not a two-year jail term, during the sentencing hearing.

{¶ 109} Appellant further argues that the trial court's decision to run Count 5 concurrently "evinces an arbitrary sentence." Again, appellant's argument is unsupported by the record. As noted above, the trial court ordered the three endangering children convictions — Counts 3, 4, and 5 — to run consecutively.

{¶ 110} Finally, appellant argues that the trial court erred by ordering the endangering children convictions on Counts 3 and 4, pertaining to J.H. and R.H., to run consecutively because the children were not inside the bedroom. Appellant's argument is misplaced. R.C. 2929.41(B)(1), governing the imposition of consecutive sentences for misdemeanors, provides that in order to impose consecutive sentences, the trial court simply needs to "specify" that the sentences would be served consecutively. *See State v. Jones*, 8th Dist. Cuyahoga No. 108438, 2020-Ohio-1273, ¶ 19. Here, the trial court specified that all three endangering children convictions, including Counts 3 and 4, were to run consecutively.

{¶ 111} For all of the foregoing reasons, we find no basis upon which to conclude that the trial court abused its discretion in imposing an aggregate jail term of 18 months.  Appellant's sixth assignment of error is overruled.

### III. Conclusion

{¶ 112} After thoroughly reviewing the record, we affirm the trial court's judgment.  Appellant's domestic violence and endangering children convictions were supported by sufficient evidence and are not against the manifest weight of the evidence.  The trial court did not abuse its discretion in admitting irrelevant and prejudicial testimony, and the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial.  The trial court did not abuse its discretion in sentencing appellant to 18 months in jail.

{¶ 113} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION

SEAN C. GALLAGHER, P.J., CONCURRING IN JUDGMENT ONLY:

{¶ 114} I respectfully concur in judgment only. The majority's decision highlights an issue on the application of R.C. 2919.22(A) as to whether a child-endangering conviction can be sustained solely based on a presumption that the defendant created a substantial risk to the mental health or safety of the child based on the child's witnessing the defendant's acts of violence, or other deviant behavior, against another family member. In light of the limited arguments presented for review, we should avoid rendering any conclusions furthering the chasm between the cases identified by the majority.

{¶ 115} In *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 30 (8th Dist.), it was concluded that evidence demonstrating that a child heard or viewed a defendant verbally and physically attack his spouse, although it was acknowledged that witnessing such an event could have a negative emotional impact on the child, was not sufficient evidence to sustain a conviction under R.C. 2919.22(A). According to *Cohen*, the fact that the children witnessed and were near

the physical assault did not demonstrate that the attacking spouse created a substantial risk to the mental or physical health of the children. *Id.* at ¶ 30. The panel in *State v. Jackson-Williams*, 8th Dist. Cuyahoga Nos. 108516 and 108611, 2020-Ohio-1118, ¶ 36, reiterated that a child's observation of a spouse's aggressive behavior toward another spouse was insufficient evidence demonstrating that the belligerent spouse created a substantial risk to the health or safety of the child as a matter of law. According to a combined reading of those two decisions, whether a defendant creates a substantial risk to the mental or physical health of the child cannot be presumed solely based on the child's proximity to an altercation.

{¶ 116} The majority factually distinguishes *Cohen* and *Jackson-Williams* on the basis that two children in this case were "involved" in the altercation. I cannot join that conclusion in light of the fact that their involvement was limited to their proximity to the altercation after the defendant physically attacked the children's mother (the daughter first entered the room after Kouame choked her mother, and the son entered after Kouame caused the head injury) or while the children observed the altercation from behind a locked bedroom door. There is no evidence that Kouame continued the physical assault while the children were in the bedroom. In addition, there is no evidence that Kouame assaulted or threatened to assault the children or escalated the incident to such a degree that posed any physical danger to the children.

{¶ 117} In both *Cohen* and this case, the children were present during at least part of the altercation. *Cohen* at ¶ 19. Similar to *Jackson-Williams*, the child victims

in this case also observed part of the assault from behind a closed door. Thus, the children in this case were just as "involved" in altercation as the child victims in the conflict cases, that is to say, they were all present at some point during the altercation but were not actively involved in, or the subject of, the physical attack. *But see, e.g., Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, ¶ 41 (finding evidence of child endangerment based on the spouse's continued physical assault while the children were near their mother or hanging on the offending spouse in an attempt to end the attack); *State v. Florencio*, 8th Dist. Cuyahoga No. 107023, 2019-Ohio-104, ¶ 11 (for the purposes of R.C. 2919.22(A), defendant instigated the hostile situation by pointing an unloaded firearm at the mother's head, causing the daughter to fire a firearm in defense of her mother, thereby creating a substantial risk of harm to herself); *State v. Durbin*, 5th Dist. Holmes No. 13 CA 2, 2013-Ohio-5147, ¶ 47 (physically assaulting the child constituted the creating of a substantial risk to the health of the child).

{¶ 118} On this point, the state entirely relies on the children's fear attributed to Kouame's expletive-laced command, ordering the daughter to leave the room. The state, however, does not cite any case in support of the claim that aggressively yelling at a child can create a substantial risk to the health and safety of a child — such a broad conclusion adopted as a proposition of law could lead to unintended consequences. It is true that R.C. 2919.22(A) is broadly worded such that the mental and physical health of the endangered child falls under its purview. *See, e.g., State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 13-15 (the

absence of a modifier preceding the word "harm" demonstrates the legislative intent that harm encompasses both mental and physical harm). However, the state has not presented any evidence that Kouame's conduct created a substantial risk to the children's mental health. At best the state asks us to presume such a risk based solely on the fact that the children witnessed Kouame's deviant behavior — a presumption that was tacitly rejected in *Cohen* and *Jackson-Williams*. As a result, I cannot agree that *Cohen* or *Jackson-Williams* are factually distinguishable from this case.

{¶ 119} Further, *State v. Jay*, 8th Dist. Cuyahoga No. 91827, 2009-Ohio-4364, further highlights the discord between the potential conflict cases. In *Jay*, the state claimed that the defendant created a substantial risk to the mental health of a child by allowing that child to witness the defendant sexually abusing a sibling. The divided panel presumed that witnessing the sexual abuse of a sibling could affect the mental health of the child, but no evidence was discussed to support such a conclusion. *Jay* at ¶ 43 (Stewart, J., dissenting). Although mental health can be considered under R.C. 2919.22(A), the state must present evidence of the substantial risk to the mental health that was created by the defendant's conduct. Simply presuming that the witnessing of an incident can cause such harm is insufficient. *See Cohen,* 2015-Ohio-1636, 31 N.E.3d 695, at ¶ 29; *Jackson-Williams*, 8th Dist. Cuyahoga Nos. 108516 and 108611, 2020-Ohio-1118, at ¶ 35.

{¶ 120} Notwithstanding the foregoing, Kouame does not contend that *Cohen* is dispositive, nor does he even cite *Jackson-Williams* or *Jay*. App.R.

16(A)(7). As such, the issue is not squarely before this panel. The sole argument advanced by Kouame is that there is insufficient evidence of the child endangerment when the facts are considered in the light most favorable to his perspective. Since all reasonable inferences under the sufficiency standard inure to the state's benefit, we could summarily reject Kouame's claim. Hyper-analyzing legal precedent and resolving potential conflicts best occurs under the crucible of advocacy. In light of the limited arguments provided by the parties, I would refrain from offering any conclusions with respect to the interplay between the above-cited cases. Accordingly, I concur in judgment only.